# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER BASTANI, <br> 2809 Lee Oaks Court, Unit 102 <br> Falls Church, Virginia 22046, <br><br> ELEANOR LAUDERDALE, <br> 901 Northwest Drive <br> Silver Spring, Maryland 20901, <br><br> KEVIN MCCARRON, <br> 3151 Newton Street NE <br> Washington, DC 20018, <br><br> SCOTT PARIS, <br> 2006 Windys Run Road <br> Catonsville, Maryland 21228, <br><br>     Plaintiffs, <br><br> vs. <br><br> AMERICAN FEDERATION <br> OF GOVERNMENT <br> EMPLOYEES, AFL-CIO, <br><br> 80 F St., NW <br> Washington DC 20001 <br><br>     Defendant. | __cv____ |

## COMPLAINT

Plaintiffs Alexander Bastani, Eleanor Lauderdale, Kevin McCarron, and Scott Paris by and through their undersigned counsel, file this Complaint alleging that Defendant American

Federation of Government Employees, AFL-CIO ("AFGE"), violated Plaintiffs' rights protected by the Labor-Management Reporting and Disclosure Act ("LMRDA").

### JURISDICTION & VENUE

1. This Court has jurisdiction over Counts I & II in this matter pursuant to 28 U.S.C. §1331, 29 U.S.C. §412, and 29 U.S.C. §185.

2. This Court has jurisdiction over Count III in this matter pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court because Defendant maintains its principal office within this District.

### PARTIES

4. Plaintiff Alexander Bastani, served as the elected President of AFGE Local 12, with offices at 200 Constitution Ave., N.W., Room N1503, Washington DC 20010, from April 2006 until his improper removal from office by Defendant in October 2017. He was planning to run for re-election in October 2017.

5. Plaintiff Eleanor Lauderdale served as the elected Executive Vice President of AFGE Local 12 from April 2006 until her improper removal from office by Defendant in August 2017. She was planning to run for re-election in October 2017.

6. Plaintiff Kevin McCarron, served as elected Treasurer of AFGE Local 12, with offices at 200 Constitution Ave., N.W., Room N1503, Washington DC 20010, from April 2006 until his improper removal from office by Defendant in August 2017. He was planning to run for re-election in October 2017.

7. Plaintiff Scott Paris, served as the appointed Head Steward of AFGE Local 12, with offices at 200 Constitution Ave., N.W., Room N1503, Washington DC 20010, until his improper removal from office by Defendant in October 2017.

8. Defendant AFGE is a labor organization within the meaning of 29 U.S.C. §402(i) and 29 U.S.C. §185. AFGE maintains is principal office at 80 F St., NW, Washington DC 20001. AFGE is a national labor organization with over 1,000 local unions.

## FACTS

9. AFGE Local 12 is based in Washington, D.C., and has approximately 1300 dues paying members. It is the largest local within the DC Metropolitan Area. Thus, it has the greatest number of delegates from the area to attend the AFGE National Convention.

10. Local 12's charter was issued in 1937.

11. Local 12's members are all employed at the United States Department of Labor, in various locations throughout the DC Metropolitan Area.

12. Local Unions in AFGE also must operate consistently with the terms of the AFGE Constitution, attached hereto as Exhibit 1 to the Complaint.

13. The AFGE Constitution also sets forth the terms which govern AFGE's relationship with its local unions, including Local 12.

14. Local 12 holds elections for its officer positions every two years.

15. In 2015, Bastani ran unsuccessfully against AFGE National President J. David Cox for the office of National President.

16. Local 12 had an election for officers scheduled for October 18, 2017.

17. The Plaintiffs all planned to run for re-election at that time.

18. Plaintiffs' political opponents within Local 12 had also been campaigning for the 2017 election.

19. Plaintiffs'' political opponents within Local 12 are politically loyal to AFGE National President J. David Cox and National Vice President Eric Bunn.

20. On October 4, 2017, Cox placed Local 12 into trusteeship, through an expedited trusteeship procedure. The letter imposing the trusteeship is attached hereto as Exhibit 2 to the Complaint.

21. As grounds for the "emergency" trusteeship, Cox made the following allegations:

    a. That the Local 12 officers refused to engage the services of a person recommended by AFGE's national office to conduct an audit of Local 12's finances;

    b. That the Local 12 officers ignored the will of the membership when the Local Union declined to pay $20,000 to a member's personal attorney;

    c. That the Local 12 officers spent $18,000 to host a luncheon to distribute the proceeds of their $7,000,000 FLSA award.

22. The imposition and continuation of the trusteeship effectively preempted the scheduled October 18th election of officers.

23. The AFGE appointed Trustee, Nate Nelson, appointed members of the political slate opposed to Bastani to conduct the day to day affairs of the Local Union and to represent Local 12's members, jobs which the Local 12 membership had elected Plaintiffs to do.

24. The stated bases for the trusteeship were frivolous, and the Plaintiffs had previously provided adequate and uncontradicted explanations for all of the matters raised in the notice of Trusteeship.

25. The purpose of the trusteeship was to obstruct Cox's and Bunn's political opponents in Local 12 from controlling Local 12's large delegate pool. Locals under trusteeship have no voting power at the national convention. Cox is running for reelection at the August 2018 AFGE Convention, where delegates from each Local vote for candidates for National President.

26. Subsequent to the 2015 election in which Bastani ran against Cox for AFGE National President, Bastani continued to be an outspoken critic of Cox.

27. Bastani frequently and publicly assailed Cox as to the following issues:

    a. Cox and eight members of his National Executive Committee (NEC) travelled to Israel for Cox to receive the Rabin Award; Bastani questioned the expense of this trip which still has not been revealed. Bastani continues to question the propriety of the trip. Bastani has noted that formal requests for cost of the trip have been stonewalled by Cox.

    b. Bastani charged that Cox prematurely endorsed Hillary Clinton for President in December of 2015. He charged that of the 800 AFGE members responding to the poll only 22% had selected Clinton. He argued that given this polling, Cox had no authority to assert that AFGE supported Clinton.

    c. Bastani has raised repeatedly Cox's practice of taking out-of-town AFGE leaders to the upscale Charlie Palmer Restaurant, and charging the tab to AFGE. He has accused Cox of using AFGE funds to curry favor with local presidents, i.e., buying delegate votes via swanky dinners.

    d. Bastani has also assailed Cox for his non-litigatory posture; urging the settlement of matters regardless if the union has the better case. He has charged that Cox's entire focus is not on keeping any single member employed, but rather on getting new members and more money; money that may be ill-spent.

    e. Along with the Israel expense, Bastani has raised numerous questions, in numerous venues about the propriety of the purchase of rings for the entire NEC. In 2015, the NEC used AFGE funds to purchase Super Bowl type rings for themselves. Cox approved the purchase but declines to disclose the cost. Bastani has raised this issue repeatedly and has stated that he would raise it at the 2018 National Convention.

28. The other named Plaintiffs have also been outspoken critics of Cox and his administration for several years, generally along the lines and issues expressed by Bastani.

29. Eric Bunn is an AFGE National Vice-President from AFGE District 14, of which Local 12 is an affiliate. He is a member of the NEC.

30. Bastani challenged Bunn for his position in the 2017 election for AFGE National Vice-President from AFGE District 14.

31. Bastani and the other named Plaintiffs have been outspoken critics of Bunn and his policies and governing over the last several years.

32. In 2017, Local 12 leadership secured a settlement from the United States Department of Labor for FLSA violations that resulted in a total back pay award of over $7 million to approximately 4,500 DOL employees and retirees.

33. This settlement was obviously popular among the Local 12 members and prospective members, and the Bastani Administration was very popular among all DOL employees for obtaining such a large settlement.

34. The processing and distribution of the individual back pay checks by a third party administrator would have been extremely costly, so Local 12 decided to do it in person, using Local 12 volunteers, at a celebration banquet that cost substantially less than it would have cost to outsource the process to a third party.

35. The June 2017 luncheon was a huge success and further galvanized the Local 12 membership's support for the Bastani Administration, and in turn its opposition to Cox and Bunn. Further, the luncheon was a membership recruiting tool that netted numerous new members, whose dues for one year [the mandatory minimum time for membership] effectively helped offset the cost of the luncheon.

36. On December 1, 2017, Cox's appointed "independent" panel conducted a hearing to establish whether the trusteeship should be continued.

37. The trusteeship hearing panel consisted of Horace Cooper (Chair), Joseph Malizia, and Denise S. Henry.  Each panel member was appointed by AFGE National President Cox, and each is/was an AFGE official.

38. The Cox appointed trustee, Nate Nelson, was represented at the hearing by Keisha Williams, an attorney for AFGE District 14.

39. Williams is not a member of Local 12.

40. Williams submitted exhibits, made statements to the panel on the record, and questioned witnesses.

41. Plaintiffs brought their attorney to the hearing to represent their interests as the elected leaders of Local 12, but the panel refused to allow Plaintiffs' attorney to remain in the hearing room.

42. On January 2, 2018, Cox issued a memorandum announcing that the panel had "ratified" the trusteeship and that Local 12 would remain in trusteeship with the goal of providing Local 12's members "a more responsive and more competent union."

## COUNT I- LMRDA SECTION 101(a)

43. The allegations set forth above are incorporated by reference as if fully stated within this Count.

44. LMRDA Section §101(a)(2), 29 U.S.C. §411(a)(2), protects the rights of union members to express their views on their union's internal affairs and its leadership. It is an analog to the U.S. Constitution's First Amendment, but in the context of a member's rights within his labor union. It states in relevant part,

> "FREEDOM OF SPEECH AND ASSEMBLY.-- Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

45. LMRDA §102, 29 U.S.C. §412, states, "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

46. As members and elected leaders of Local 12, Plaintiffs had the right and obligation to express their opinions about how AFGE was being managed.

47. Although AFGE has attempted to convince the members of Local 12 that Plaintiffs violated rules and regulations of AFGE and Local 12, those reasons for the ouster of Plaintiffs from office are pretextual and made in bad faith contrary to facts.

48. The "reasonable rules" proviso of §101(a)(2) cannot be used as a subterfuge to suppress political dissent.

## COUNT II- LMRA SECTION 301

49. The allegations set forth above are incorporated herein as if fully restated within this Count.

50. 29 U.S.C. §185 states, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

51. The AFGE Constitution is a "contract between labor organizations" within the meaning of 29 U.S.C. §185. A copy of the Constitution is attached hereto as Exhibit 1 to the Complaint.

52. Article IX of the AFGE Constitution states in relevant part,

> "SEC. 5(b)(1) In all cases but secession from AFGE or confirmed loss of leadership, or where the local or council fails to agree to mediation, the National President shall be authorized and empowered with the approval of the NEC, to place any council or local under trusteeship only after the following procedures have been followed:
>
> (1) There will be mediation by a certified mediator, appointed by the National President and paid from the District in which the trusteeship is proposed. A council trusteeship will be paid by the Office of the National President. After mediation and conciliation has been exhausted to resolve any conflict;
> (2) The Federation should then review the documentation created during the period for resolution and provide a copy to the NEC;
> (3) After the review the disputed local should be notified within 120 days of the proposed notice to place a local in trusteeship and the reason why;
> (4) That the Federation allow the local a response period after notification (no more than 30 work days) to state why it should be placed in trusteeship;
> (5) The Federation should then send a decision letter either sustaining or revoking a proposed notice of trusteeship;
> (6) This proposed notice should first be served upon the Executive Board by certified mail.
>
> Prior the imposition of trusteeship, the notice shall be sent by mail from the National Office to all members of the affiliate setting forth the reasons why the affiliate was placed in trusteeship. In all cases except secession or confirmed loss of leadership, all elected offices shall remain in office until after a decision from a fair and impartial hearing by the Federation. In all cases except secession or confirmed loss of leadership, the National President shall employ an independent arbitrator solicited from the AAA or another arbitration association. The selected arbitrator shall live in close proximity to the council or local where the hearing is being heard. The arbitrator shall have the authority to decide the trusteeship based on the standard of evidence used in the courts. The arbitrator shall conduct a hearing concerning the circumstances surrounding the trusteeship. The arbitrator shall be selected with consultation by the NVP having jurisdiction over the affiliate. The affiliate and the National President

designee shall select the arbitrator from a seven member list supplied by the AAA or other association.

Either party shall have three opportunities to strike from such list until there remains one arbitrator. This last arbitrator shall be selected to hear the case for trusteeship for the affiliate. If it is documented by certified return notice that the local or council will not participate in the selection of the arbitrator after certified notice, the National President shall contact and employ this arbitrator; the expense shall be borne by the district in which the trusteeship is proposed. For proposed council trusteeships, the cost will be paid by the Office of the National President.
The hearing normally shall commence within 60 days after the notice of trusteeship has been served upon the members of the affiliate. The reason for the establishment of the trusteeship will be fully explored through the testimony of witnesses. The arbitrator will rule on questions of evidence and testimony at the hearing.

Within 15 days, the National President will receive the record of hearing, along with the findings and the decision of the arbitrator. He or she shall render a written decision, either ratifying the establishment of the trusteeship if the preponderance of the charges are sustained, or rescinding the trusteeship if the decision is not sustained by a preponderance of the evidence. The National President shall not modify or change the decision of the arbitrator.

SEC. 5(b)(2). In cases of secession or confirmed loss of leadership, the imposition of trusteeship will be followed within 90 days by a report and recommendations by a three-member panel appointed by the President. The panel may act on the basis of the written record, or may hold an on-site hearing, or may take evidence or argument by electronic means.

SEC. 5(b)(3). If the decision/report is for trusteeship, the National President will notify the affiliate; any member may appeal the decision in writing to the Labor Department or the next Convention. A copy shall be mailed by certified or registered mail to the National Secretary-Treasurer of the Federation, within 15 days after the National President has established the trusteeship.

The appeal will be processed under the regulations/guidance of the Labor Department. If the trusteeship is still sustained, the member of the affiliate can only appeal again that decision at the next Convention.

While an affiliate in the Federation is under trusteeship the trustee will ensure that the membership of the affiliate will be involved or participate by: allowing the membership's approval for all expenditures over $250;

> providing the membership a voice in setting policy; ensuring representation is given; and allowing the Bill of Rights to govern.
>
> To safeguard and protect the affiliate's assets, the Federation will take immediate charge of all equities and properties, both tangible and intangible, acquired or possessed by the affiliate for the purpose of preventing corruption or financial malfeasance. The Federation will assure the performance of the collective bargaining agreement, restore the duties and responsibilities of the representatives and promote democratic procedures, and otherwise carry out the legitimate objectives of the Federation.
>
> …"

53. AFGE failed to follow the procedures required above, specifically:

    a. AFGE failed to even try, let alone exhaust, the mediation process;

    b. AFGE never proposed to put Local 12 into trusteeship, instead simply imposed the trusteeship;

    c. Because of the AFGE's failure to follow those two requirements, Local 12's elected leadership never had an opportunity to respond to any impartial authority about the false accusations

    d. AFGE removed Local 12's officers without following these procedures;

    e. AFGE failed to employ the services of an independent arbitrator to decide whether the trusteeship should be imposed;

54. There has never been any allegation that Local 12 fell into the categories of "secession or confirmed loss of leadership" to justify AFGE's imposition of trusteeship before following the detailed procedures set forth in the Constitution excerpt quoted above.

55. In its zeal to silence Plaintiffs' criticisms of the Cox and Bunn administration, AFGE has failed to follow the rules in its own Constitution.

## COUNT III BREACH OF LAW (DISTRICT OF COLUMBIA LAW)

56. The allegations set forth above are incorporated herein as if fully restated under this Count.

57. AFGE's failure to comply with the terms of its own Constitution when it imposed the improper trusteeship over Local 12 was a breach of contract under District of Columbia law because the AFGE Constitution is itself a contract between AFGE and its affiliates (and in turn the affiliates' properly elected governing officials.)

## RELEIF REQUESTED

58. The allegations set forth above are incorporated herein as if fully restated under this Request for Relief.

59. It is respectfully requested that this Court:

    a. Grant preliminary injunctive relief ordering AFGE to allow Local 12's elected leadership back into office with all the rights that go with those offices.

    b. Issue a permanent injunction prohibiting AFGE from removing or attempting to remove Plaintiff's elected leadership from Local 12 office.

    c. Require AFGE to make Plaintiffs whole for any monetary damages suffered as a result of the improper trusteeship.

    d. Require AFGE to notify the Local 12 membership (by the same means it used to notify Local 12 membership of the trusteeship decision) that AFGE improperly removed Local 12's elected leaders from office in violation of federal law and AFGE's Constitution.

e.  Require AFGE to pay Plaintiff's reasonable attorneys' fees and litigation costs.

f.  Award such other relief as just and proper.

A JURY TRIAL IS DEMANDED

                                                Respectfully submitted,

                                                _____/s/_____
                                                Jonathan G. Axelrod
                                                Justin P. Keating
                                                Beins, Axelrod, P.C.
                                                1030 15th St. NW
                                                Suite 700 East
                                                Washington DC 20005
                                                202.328.7222
                                                jaxelrod@beinsaxelrod.com
                                                jkeating@beinsaxelrod.com

                                                **COUNSEL TO PLAINTIFFS**