UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER BASTANI** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO**, <br><br> Defendants. | Case No. 1:18-cv-00063 (TNM) |

## **MEMORANDUM OPINION**

Plaintiffs Alexander Bastani, Eleanor Lauderdale, and Kevin McCarron (collectively, the "Local Officers") claim that the American Federation of Government Employees ("AFGE") wrongfully imposed an emergency trusteeship on their local AFGE union in retaliation for their protected speech and in violation of the AFGE Constitution. AFGE moved for summary judgment. Upon consideration of the pleadings and the entire record, AFGE's Motion for Summary Judgment will be granted in part and denied in part. AFGE is entitled to summary judgment on Lauderdale and McCarron's claims in Count I of the Complaint. But summary judgment will be denied for Bastani's claim under Count I because there is still a genuine dispute of material fact. Count II of the Complaint will be dismissed as moot.

### I. BACKGROUND

AFGE is made up of more than 1,000 local unions. Compl. 3, ECF No. 1.[1] One of those local unions is the AFGE Local 12, part of the larger AFGE District 14. *Id.* Local 12 is the largest AFGE local union in the D.C. metropolitan area. *Id.*

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system.

Every two years, Local 12 holds elections for its officer positions. *Id.* Beginning in April 2006, the Local Officers began to serve as officers for Local 12. *Id.* at 2. From April 2006 to October 2017, Alexander Bastani was the local president, Eleanor Lauderdale was the executive vice president, and Kevin McCarron was the treasurer. *Id.* All planned to run for re-election in October 2017. *Id.* at 3.

District 14 Vice President Eric Bunn received several complaints about the management of Local 12 while Bastani, Lauderdale, and McCarron were Local 12 officers. Bunn Dep. 4–7, ECF No. 34-11. Bunn assigned Nathan Nelson to investigate. *Id.* at 3:6–13. In January 2017, Bunn submitted a recommendation to AFGE National President J. David Cox that Local 12 be placed in a trusteeship. *See* Mem. from Bunn to Cox (Jan. 13, 2017), ECF No. 35-14; Bunn Dep. 3:18–4:14, ECF No. 35-13. Nothing appears to have resulted from that recommendation. Bunn Dep. 4:17–19, ECF No. 35-13.

But Bunn was undeterred. Later that year, he again submitted a memo to Cox recommending that he place Local 12 in a trusteeship. *See* Mem. from Bunn to Cox (Sept. 21, 2017), ECF No. 35-5. The memo claimed to outline a "pattern of egregious misconduct" by Local 12's officers and stated that Local 12 needed to be "placed in a trusteeship for the purpose of safeguarding and protecting the local." *Id.* at 2.

The AFGE Constitution, which governs AFGE administrative processes and AFGE's relationship with local unions, allows the national president to impose a trusteeship on an expedited basis when there is a "violation of law established by a preponderance of evidence." AFGE, Const. and Rules 12 (2015), ECF No. 1-3. Relying on this provision of the AFGE Constitution, Cox forwarded a ballot to members of AFGE's National Executive Counsel ("NEC") to vote on whether to impose a trusteeship on Local 12. Mem. from Cox to NEC (Sept.

26, 2017), ECF No. 15-2. Cox and Bunn recused themselves from the vote. Hr'g Tr. 78:13–79:23 (Apr. 16, 2018), ECF No. 19.

The NEC voted to place Local 12 under a trusteeship. Mem. From Cox to NEC (Oct. 4, 2017), ECF No. 15-3. Cox notified Local 12 of the trusteeship. Mem. from Cox to Members, AFGE Local 12 (Oct. 4, 2017), ECF No. 1-4. The notice stated that the basis for the trusteeship was a "violation of law" and cited three examples of misconduct:

> "[T]he Local Executive Board have [sic] failed to abide by a vote of the Local membership, conducted in September 2016, regarding the establishment of an audit committee and the hiring of an outside vendor for conducting an audit. The Local also failed to honor the vote of the membership at meetings to fund members' representation, and there have been expenditures without proper approval, specifically $18,000 at the Hyatt Regency. All of this is in violation of 5 U.S.C. § 501(a) and 29 C.F.R. § 458.32."

*Id.* at 1. As a result of the trusteeship, Bastani, Lauderdale, McCarron, and all other incumbent Local 12 officers were automatically removed from office. *Id.* Cox appointed Nelson to act as the Local 12 trustee. *Id.*

About two months later, pursuant to the AFGE Constitution, Cox convened a three-member panel to review AFGE's expedited trusteeship decision. Compl. 7. The panel issued a decision affirming AFGE's imposition of the trusteeship. Bastani Dep. 6:3–8, ECF No. 34-4.

The Local Officers then filed a Complaint here seeking a preliminary and permanent injunction on Local 12's trusteeship as well as declaratory and monetary relief. Compl. 13–14. Following an evidentiary hearing with testimony from several key witnesses, the Court denied the Local Officers' request for a preliminary injunction. Hr'g Tr. 65:2–4 (Apr. 17, 2018), ECF No. 20. The Court also granted in part and denied in part AFGE's Motion to Dismiss. *Id.* at 66–76. The Court dismissed Count III of the Local Officers' Complaint which alleged a breach of contract under D.C. law. *Id.* at 74:24. But the Court found that the Local Officers had plausibly

stated a claim upon which relief could be granted for a violation of their free speech rights under Section 102(a)(2) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), *id.* at 66:22–23, 69:12–13, and for a breach of the AFGE Constitution under Section 301(a) of the Labor Management Relations Act ("LMRA"), *id.* at 71:2–3, 73:5–6.

In July 2018, before exiting the trusteeship, Local 12 held an election for its officers. Bastani Dep. at 6:21–7:2, ECF No. 34-4. Bastani, Lauderdale, and McCarron ran for office again and none of them were re-elected. *Id.* at 6:21–7:6; Lauderdale Dep. 6:20–7:5, ECF No. 34-5; McCarron Dep. 12:2–15, ECF No. 34-6. AFGE lifted the Local 12 trusteeship the following month. Mot. Summ. J. 8, ECF No. 34-1.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the initial responsibility for showing the lack of a genuine dispute. *Celotex*, 477 U.S. at 324. The nonmoving party must, then, point to "specific facts" in the record "showing that there is a genuine issue for trial." *Id*.

When deciding a motion for summary judgment, the Court "must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship. v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999). The Court's function at the summary judgment stage is not to "weigh the

4

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. ANALYSIS

The Local Officers challenge AFGE's Local 12 trusteeship on two grounds. First, they claim that AFGE violated their free speech rights under LMRDA § 101(a)(2) by imposing the trusteeship in retaliation for their protected speech. Compl. 8–9. Second, Local Officers are suing under LMRA § 301, alleging that AFGE breached its contract with Local 12 by imposing the trusteeship on an invalid and pretextual basis. *Id.* at 9–12.

The LMRDA and LMRA govern a union's relationship with other labor organizations and with union members. The LMRDA, known as the union members' "bill of rights," is designed to ensure that unions are "democratically governed." *See Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (1989). It guarantees "every member equal voting rights, rights of free speech and assembly, and a right to sue," *id.*, and provides a private cause of action for union members to sue for a violation of their rights. *See* 29 U.S.C. § 412.

Meanwhile, the LMRA grants federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations[.]" 29 U.S.C. § 185(a). Under the LMRA, district courts may exercise jurisdiction over suits alleging a violation of a union's constitution. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991). And individual union members who are beneficiaries to the union constitution may bring a suit to enforce its terms. *Id.* at 101.

### A. The Local Officers' LMRA Claim is Moot

AFGE suggests that the Local Officers' claims are moot because Local 12 held elections for its officers in July 2018 and because AFGE lifted the Local 12 trusteeship in August. Mot. Summ. J. at 7–8. According to AFGE, given these events, the Local Officers' requests for declaratory and injunctive relief will no longer redress their injuries. The Court agrees in part. The Local Officers' LMRA claim should be dismissed as moot. But their retaliation claims under the LMRDA remain redressable given their request for monetary damages.

A case becomes moot when "'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'" *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

In their Complaint, the Local Officers request that the Court (1) issue an "injunction prohibiting AFGE from removing or attempting to remove Plaintiffs' elected leadership from Local 12 office"; (2) require "AFGE to notify the Local 12 membership . . . that AFGE improperly removed Local 12's elected leaders from office in violation of federal law and AFGE's Constitution"; (3) and "require AFGE to make Plaintiffs whole for any monetary damages suffered as a result of the improper trusteeship." Compl. 13, ECF No. 1.

The Local 12 election has rendered the Local Officers' claim for injunctive relief moot. In July 2018, Local 12 held an officer election in which Bastani, Lauderdale, and McCarron participated. Bastani Dep. 6:21–7:6, ECF No. 34-4; Lauderdale Dep. 6:20–7:5, ECF No. 34-5;

McCarron Dep. 12:2–15, ECF No. 34-6.  They were not reelected.  Bastani Dep. 6:21–7:6, ECF No. 34-4; Lauderdale Dep. 6:20–7:5, ECF No. 34-5; McCarron Dep. 12:2–15, ECF No. 34-6.

While the trusteeship may have been the original cause of their defenestration, the reason the Local Officers remain without office is that they lost the subsequent election.  An injunction restoring the Local Officers to their prior roles within Local 12 would require the Court to overturn the democratic processes of the union.  This the Court cannot do.  *See Gilvin v. Fire*, 259 F.3d 749, 761 (D.C. Cir. 2001) ("Removing an officer by a vote of the union's membership, because his opinions no longer represent the will of that membership, represents the expression of democracy, not its subversion.").

More, AFGE's decision in August 2018 to lift the Local 12 trusteeship renders moot the Local Officers' request for the Court to declare that AFGE violated its constitution when it imposed the trusteeship.  The Court is "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."  *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).  Local 12's trusteeship has ended and there is no allegation that its imposition has a "continuing effect" that this Court can remedy for the Local Officers through a declaration.

The Local Officers' third request for relief is that the Court "make Plaintiffs whole" for monetary damages caused by the "improper trusteeship."  Compl. 13.  It is unclear based on the pleadings what these monetary damages would encompass.  There is no indication that the Local Officers believe they would be personally entitled to any monetary relief for AFGE's breach of contract with Local 12.  Instead, they tie this request for monetary damages only to their retaliation claims under the LMRDA.  *See* Pls.' Opp'n 3 ("The LMRDA claim (Count I) has monetary remedies. The Complaint seeks monetary damages as well as injunctive relief.").  Because the Local Officers' injuries under their retaliation claim are redressable by monetary

damages, Count I of their Complaint is not moot. But there is no viable remedy left for the Local Officers for their LMRA breach of contract claim.

The Local Officers' LMRA claim, then, must be dismissed unless any of the exceptions to mootness apply. They do not. First, for a case to be "capable of repetition, yet evading review," a party must show "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). Here, there is no reason to believe that Bastani, Lauderdale, McCarron, or Local 12 would be subjected to the same expedited trusteeship process again under similar circumstances. Over a year has passed since AFGE lifted the trusteeship and the Local Officers have offered this Court no statements or evidence that would suggest that AFGE is likely to place Local 12 in a trusteeship again or that a new trusteeship would affect these plaintiffs.

For similar reasons, the Local Officers' LMRA claim does not fall within the voluntary cessation exception. *See Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000). AFGE lifted the trusteeship in August 2018 not to moot the case but in compliance with its constitution, which states that a trusteeship "*shall* end within 12 months." AFGE, Const. and Rules 12 (2015), ECF No. 1-3 (emphasis added). As discussed above, there is no indication that AFGE intends to place Local 12 in a new trusteeship if this case were dismissed. Because neither of these two exceptions to mootness apply, the Local Officers' LMRA claim will be dismissed.

### B. Summary Judgment on the Local Officers' LMRDA Claims will be Granted in Part and Denied in Part

The Local Officers allege that AFGE imposed the trusteeship on Local 12 in retaliation for their criticisms of Cox, Bunn, and AFGE, in violation of LMRDA § 101(a)(2). *See* Compl. 8–9. AFGE counters that Cox and the NEC imposed the trusteeship for legitimate reasons, because the local leadership "failed to abide by vote[s] of the Local membership" and made unauthorized expenditures without proper approval, notably, an $18,000 banquet charge. Mot. Summ. J. 17–26; Mem. from Cox to NEC (Oct. 4, 2017), ECF No. 15-3.

The LMRDA states, in part, that "[e]very member of any labor organization shall have the right . . . to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings." LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2). To establish a *prima facie* case for a violation of Section 101(a)(2), the Local Officers must establish that (1) their conduct was an exercise of free speech protected under LMRDA; (2) they were subjected to an adverse action; and (3) the adverse action was "'a direct result of [their] decision to express disagreement' with the union's leadership." *See Casumpang v. ILWU, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (citing *Lynn*, 488 U.S. at 354).

Based on the pleadings and the record, a reasonable jury could not return a verdict in favor of Lauderdale or McCarron on their retaliation claims. But there remains a genuine issue of material fact about whether Cox sought to retaliate against Bastani for his frequent, public criticism of Cox and his administration. So Bastani's LMRDA claim survives.

### 1. Lauderdale

Lauderdale alleges that she was removed from office, through the Local 12 trusteeship, because she criticized Cox. Compl. 9. Yet Lauderdale has not directed this Court to any evidence that she in fact engaged in protected speech. Lauderdale's answers to AFGE's interrogatories make only the bare assertions that she criticized Cox and that it was "well known within Local 12 and to Cox" that she was "aligned with [Bastani and McCarron] on matters of AFGE internal politics and AFGE's relationship with Local 12." Lauderdale Interrogs. 3, ECF No. 34-13. Lauderdale provides no actual evidence for those assertions, much less connects her speech to the Local 12 trusteeship decision. This is not enough. By contrast, AFGE submitted sworn testimony from Cox that he was not even aware of any criticism from Lauderdale. Hr'g Tr. 77:16–19 (Apr. 16. 2018), ECF No. 19.

Because Lauderdale has presented no evidence of protected speech, the Court must enter summary judgment against her. *See Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1032 (D.C. Cir. 1988) ("[A] court must enter summary judgment against a nonmovant 'who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)); *Helmer v. Briody*, 759 F. Supp. 170, 176 (S.D.N.Y. 1991) (granting summary judgment for defendants when plaintiff failed to present evidence that he engaged in speech protected under LMRDA).

### 2. McCarron

Although McCarron has provided evidence that he engaged in speech protected under LMRDA, he has failed to show that there was any causal connection between his speech and the Local 12 trusteeship. The Court agrees with AFGE that there is no genuine issue of material fact about his retaliation claim and that AFGE is entitled to summary judgment as a matter of law.

According to his Complaint, McCarron—like Lauderdale—alleges that he has been an outspoken critic of Cox and Bunn "for several years." Compl. 6. Unlike Lauderdale, McCarron can point to at least one specific occasion in which he criticized AFGE's policies. In April 2017, Bastani and McCarron joined a picket line outside AFGE's national office—where Cox works—in support of AFGE employees in contract negotiations. Hr'g Tr. 24:2–15 (Apr. 16, 2018), ECF No. 19. Bastani and McCarron were filmed and interviewed while at the picket line. McCarron Dep. 7:22–8:6, ECF No. 34-6. But neither Bastani nor McCarron contend that Cox or Bunn were at the picket line or were aware of their presence there. *Id.* McCarron identified no other specific examples of his criticism of AFGE or AFGE officers. McCarron Interrogs. 2, ECF No. 34-14.

Although McCarron engaged in protected speech, he has provided no evidence to suggest that anyone at AFGE headquarters imposed the Local 12 trusteeship in retaliation for his participation in the picket line. His only evidence that Bunn or Cox wanted him removed from office was just "the fact itself" that he was removed. McCarron Dep. 9:10–17; 5:13–17, ECF No. 34-6. And McCarron admitted that he's "never had any direct communications from President Cox." *Id.* at 6:18–19. Without evidence that anyone involved in the trusteeship decision was even aware of McCarron's picketing activity or any other critical remarks, a reasonable jury could not infer from the record that AFGE was retaliating against McCarron for his protected

speech. *See Helmer*, 759 F. Supp. at 176 (citing the lack of evidence that any defendants were aware of plaintiff's speech as one reason for granting summary judgment for the defendants because "they could not have retaliated against him for activities of which they were not even aware"); *see also Frito-Lay, Inc.*, 863 F.2d at 1032 (denying summary judgment where the nonmovant failed to submit evidence supporting an element essential to that party's case).

### 3. Bastani

Unlike his co-plaintiffs, Bastani has provided evidence showing that he often criticized Cox and his AFGE administration and that Cox was aware of the criticism. And Bastani suffered an "adverse action" by being removed from his position as Local 12 president as a result of the trusteeship imposed on Local 12. AFGE lightens Bastani's burden by acknowledging that Bastani has been a frequent critic of Cox and that Cox is aware of Bastani's comments. Mot. Summ. J. 22. But AFGE argues that it imposed the trusteeship for legitimate, non-retaliatory reasons. *Id.* at 17.

Perhaps so. But there is a genuine dispute of material fact about whether Cox was at least partially motivated by retaliation against Bastani when he placed Local 12 in a trusteeship and removed Bastani from office. Because there is "some evidence that the reason for removal from office was permissible and some evidence that the reason was impermissible, the question whether protected activities were a cause for the removal must be resolved by a trier of fact." *See Lamb v. Miller*, 660 F.2d 792, 794 (D.C. Cir. 1981). While there is evidence in the record that AFGE could justifiably place Local 12 in a trusteeship, Bastani presented enough evidence of possible impermissible motives to withstand summary judgment.

The record amply shows that there was animosity between Bastani and Cox—at least on Bastani's part. Bastani ran against Cox for AFGE national president in 2012 and 2015. Bastani

Dep. 4:2–4, ECF No. 34-4. In 2012, Bastani finished second to Cox, by a comfortable margin. *Id.* at 4:8–10. But Bastani was still Cox's closest challenger. In 2015, Bastani lost again to Cox by an even more substantial margin. *Id.* at 4:15–19. During his campaigns for national president, Bastani made comments and distributed campaign literature critical of Cox and his administration. *See* Bastani Interrogs. 2–3, ECF No. 34-12. Bastani critiqued Cox for (1) traveling to Israel with eight members of the NEC to receive an award; (2) endorsing Hillary Clinton for President while many AFGE members still did not support her candidacy; (3) taking AFGE leaders to expensive dinners on AFGE's tab; (4) using AFGE funds to purchase "Super Bowl type rings" for the NEC members; and (5) taking a "non-litigatory posture" while leading the union. *Id.*; Compl. 5–6.

Bastani also took his attacks to social media. On Facebook, he posted comments—both on his own and Cox's pages—criticizing Cox for endorsing Hillary Clinton for President. Hr'g Tr. 19:23–20:13 (Apr. 16, 2018), ECF No. 19. In December 2015, after Bastani learned of AFGE's endorsement, he announced on his own Facebook page that he was quitting the AFGE Political Action Committee because "even if you supported Hillary Clinton this was an insult to 78 percent of [AFGE] rank-and-file members" who did not support her. *Id.* at 18:16–23. After the 2016 presidential election, Bastani commented on Cox's Facebook page saying, "What no apology for endorsing HRC when she had 22 percent in your poll last November? Your reckless decision hurt thousands of people and nothing? My God if we are going to lose can't we go down fighting for a candidate that we actually had a chance to vote on?" Pls.' Opp'n, Ex. C at 3, ECF No. 35-3.[2]

---

[2] This post was deleted within 24 hours. Hr'g Tr. 20:25 (Apr. 16, 2018), ECF No. 19.

Another time, at a "Washington D.C. Metro Council AFL-CIO" event, Bastani and Cox had a face-to-face confrontation. Hr'g Tr. 21:8–11 (Apr. 16, 2018), ECF No. 19. While going through the buffet line, Cox greeted Bastani and offered to shake his hand. *Id*. at 21:10–13. Bastani refused. Bastani Interrogs. 3, No. 34-12. He told Cox that he "wasn't going to shake the hand of any Wal-Mart employee, referring to the fact that Clinton had been on the board of directors for Wal-Mart for eight-years" and insinuating that Cox was an ally of Hillary Clinton. Hr'g Tr. 21:13–16 (Apr. 16, 2018), ECF No. 19. Later, Cox approached Lauderdale, telling her that Bastani "owes me an apology." Lauderdale Dep. 5:10–14, ECF No. 34-5. Lauderdale, concerned that the confrontation would create "bad blood" between Cox and Local 12, unsuccessfully attempted to solicit an apology from Bastani. *Id*. at 5:16–21.

In addition to evidence of "bad blood" between Bastani and Cox, Bastani has provided evidence suggesting that the alleged misconduct that Bunn and Cox relied on to legitimize Local 12's emergency trusteeship may not have been as "egregious" as Bunn and Cox portrayed it. For example, the trusteeship notice cited the officers' failure to abide by the vote of the Local 12 membership as a reason to impose the trusteeship. *See* Mem. from Cox to Members, AFGE Local 12 (Oct. 4, 2017), ECF No. 1-4. But Bastani and Lauderdale claim that the vote was taken improperly in violation of Local 12's bylaws and so was not binding on the officers. Pls.' Opp'n 9; Mot. Summ. J., Ex. 7, ECF No. 34-9. Similarly, Bastani explains that he did not ignore the membership vote by hiring an auditor other than the one selected by the auditing committee. Email from Bastani to Angela White (Aug. 9, 2017), ECF No. 15-1, Tab 9; Pls.' Opp'n 7–8. He claims he hired the auditor to complete certain required forms, not to complete an audit as the trusteeship notice alleges. Pls.' Opp'n 7–8; Email from Bastani to Angela White (Aug. 9, 2017),

14

ECF No. 15-1, Tab 9; Mem. from Cox to Members, AFGE Local 12 (Oct. 4, 2017), ECF No. 1-4.

The Court need not now determine whether the trusteeship itself was improper. But Bastani at least has raised genuine issues of material fact about whether the stated reasons were pretextual and whether retaliatory motives were behind Bunn and Cox's trusteeship recommendation.

Cox admits that he was at least generally aware of Bastani's criticisms of him and his administration. Cox Dep. 4:3–4, ECF No. 35-12. But AFGE urges that Bastani "cannot establish a nexus to retaliation based on [his] protected speech" because "National President Cox *credibly* testified that he did not consider these criticisms . . . before sending out the trusteeship ballot to the NEC." Mot. Summ. J. 22 (emphasis added). This may be true. But AFGE here highlights why Bastani's claim survives summary judgment. The jury determines which testimony is credible, not the Court. *See Anderson*, 477 U.S. at 249.[3]

Here, Bastani's "showing may be far from compelling, given the long history of animosity between [Bastani] and [Cox]," but there is enough evidence that a reasonable jury could determine the trusteeship may have been imposed for retaliatory reasons. *Johnson v. Holway*, No. 03-cv-2513-ESH, 2005 WL 3307296, at *21 (D.D.C. Dec. 6, 2005); *see also Lamb*, 660 F.2d at 794 (finding a genuine issue of material fact over the motivation behind a union member's removal from office even when there was "substantial evidence" that plaintiff violated

---

[3] During the preliminary injunction hearing, the Court found Cox's and other AFGE officers' testimony credible, Hr'g Tr. 52:2–4, 56:2–3 (Apr. 17, 2018), ECF No. 20, while Bastani was "at points, evasive [and] not credible," *id.* at 47:21–22. But those findings are neither binding, nor appropriate for the Court to consider at the summary judgment stage. *See Jones v. Bernanke*, 557 F.3d 670, 681 (D.C. Cir. 2009) ("[At the summary judgment] stage we refrain from making credibility determinations, weighing the evidence, or drawing inferences from the evidence[.]").

accounting rules because he submitted evidence that he publicly supported candidates running against the union president and opposed contracts negotiated by the president).

## IV. CONCLUSION

For all these reasons, AFGE's Motion for Summary Judgment will be granted in part and denied in part. The Court will grant summary judgment for AFGE on Lauderdale and McCarron's claims and deny summary judgment as to Bastani's claim under Count I of the Complaint. Bastani, Lauderdale, and McCarron's claims for Count II of the Complaint will be dismissed as moot. A separate order will issue.

Dated: November 5, 2019                                             TREVOR N. McFADDEN, U.S.D.J.